IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ADAM BRYANT PEÑA BECERRA,<br><br>    Petitioner,<br><br>v.<br><br>KELLY SPARKS, Davis County Sheriff;<br>EVAN TJADEN, Acting Field Office<br>Director, Salt Lake City Enforcement and<br>Removal Operations, U.S. Immigration and<br>Customs Enforcement (ICE/ERO);<br>KRISTI NOEM, Secretary, United States<br>Department of Homeland Security;<br>PAMELA BONDI, U.S. Attorney General,<br><br>    Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR HABEAS CORPUS**<br><br>Case No. 2:26-cv-00212-JNP-DBP<br><br>Chief District Judge Jill N. Parrish |

On March 12, 2026, Petitioner Adam Bryant Peña Becerra, a Venezuelan national, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. For the following reasons, the court grants the petition.

## BACKGROUND

### I.    Petitioner Adam Bryant Peña Becerra

Petitioner's declarations and the exhibits produced by the parties establish the following. Petitioner is a Venezuelan national who came to the United States seeking asylum. ECF No. 1 at 1. In Venezuela, his family was targeted by gang violence due to his mother's work in education. ECF No. 1 ¶ 3. Consequently, as a teenager in 2023, Petitioner decided to travel to the United States. ECF No. 1 ¶ 10.

Petitioner entered the United States near Eagle Pass, Texas, on or about August 2, 2023. ECF No. 1 ¶ 12. Shortly after crossing, he was caught by Border Patrol agents. ECF No. 1 ¶ 13. On August 12, 2023, he was served with a Notice to Appear ("NTA"), which began standard removal proceedings under 8 U.S.C. § 1229a. ECF No. 1 ¶ 15; ECF No. 1-2 (stating "[i]n removal proceedings under [§ 1229a]"). The NTA further stated that there was a one-year from arrival deadline to file an asylum application. ECF No. 1-2 at 2. It also stated that Petitioner was subject to removal under § 1182(a)(6)(A)(i), for being a noncitizen present in the United States without being admitted or for arriving in the United States at any time or place other than as designated by the Attorney General. ECF No. 1-2.

That same day, Petitioner was transferred to the custody of Immigration and Customs Enforcement ("ICE") pending release. ECF No. 1 ¶ 15. Also on that same day, Petitioner was released on his own recognizance under 8 U.S.C. § 1226. ECF No. 1 ¶ 16; ECF No. 1-4 (I-286 Notice of Custody Determination). As a condition of release, Petitioner was required to "not violate any local, State, or Federal laws or ordinances." ECF No. 1-5 (Order of Release on Recognizance).

After being released, Petitioner at some point travelled to Arizona. On December 5, 2023, another NTA was issued. ECF No. 11-1 (also stating "[i]n removal proceedings under [§ 1229a]"). This NTA stated that it superseded the prior August 12, 2023 NTA. ECF No. 11-1.

In September 2024, Petitioner then filed an asylum application. ECF No. 1 ¶ 17; ECF No. 1-1. This application was denied in immigration court on October 3, 2025, but Petitioner has since filed an appeal to the Board of Immigration Appeals ("BIA"), which remains pending. ECF No. 1 ¶¶ 18–19.

Petitioner recently moved to Utah. ECF No. 1 ¶ 20. On March 5, 2026, Petitioner was pulled over for a traffic violation, and marijuana was found in his car. ECF No 1. ¶ 22. He was

arrested (for operating a vehicle without a license or valid insurance and for possession) and booked into Davis County jail, and despite his mother posting bail, he remained in detention due to an ICE detainer. ECF No. 1 ¶¶ 22–23; ECF No. 11 at 3. ICE officers picked him up on March 8, 2026. ECF No. 1 ¶ 24. On March 9, a state judge ordered him released, but Petitioner remains in ICE custody. ECF No. 1 ¶¶ 28–29; ECF No. 1-7 (Order of Release).

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating his custody is in violation of the law. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.").

## ANALYSIS

### I.      The Applicability of § 1225(b)(2)

The petition before the court invokes a legal issue on which this court has previously ruled on. Specifically, Respondents argue that Petitioner is an applicant for admission who is seeking admission and is thus subject to mandatory detention under 8 U.S.C. § 1225(b)(2). In *Torres Medina v. Tjaden*, this court, like many others, ruled that the government's new interpretation of §

1225(b)(2) violates the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq. See Torres Medina v. Tjaden*, No. 2:26-CV-00195-JNP, 2026 WL 800677, at *13 (D. Utah Mar. 23, 2026); *see Lemus Cristales v. Arbon*, No. 2:26-CV-00217-JNP, 2026 WL 892874, at *3 (D. Utah Mar. 31, 2026). The court adopts the reasoning of its prior ruling in holding that Respondents' detention of Petitioner under § 1225(b)(2) is unlawful. Petitioner is not seeking admission as the ordinary meaning of the term in § 1225(b)(2) would suggest.

The court, however, acknowledges there are some factual differences between *Torres Medina* and the instant petition. In *Torres Medina*, the petitioner evaded detection when entering the United States. *See Torres Medina*, No. 2:26-CV-00195-JNP, 2026 WL 800677, at *1. Here, Petitioner was previously detained by ICE shortly after crossing the border and was released on his own recognizance.

Petitioner argues that his previous release demonstrates that he was released under § 1226(a). In Petitioner's view, this means he can only be detained under § 1226 moving forward.

Respondents disagree, adhering to their view that he can be detained under § 1225(b)(2). ECF No. 11 at 15. They further argue that the statutory language of § 1225(b)(1) dictates that Petitioner had to have been detained pending his asylum application and that his actual release "does not change the statutory framework that required his detention, nor did it change the statutory framework of Petitioner's removal." ECF No. 11 at 16.

Respondents are correct that § 1225 states that if "the officer determines at the time of the interview that [a noncitizen] has a credible fear of persecution . . ., the alien *shall* be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added). But the record makes clear that the government chose not to place Petitioner in expedited removal proceedings under § 1225(b)(1). Rather, the government specifically placed him in

4

removal proceedings under § 1229(a). *See* ECF Nos. 1-2, 11-1. Further, the government released him on his own recognizance, "[p]ursuant to the authority contained in [§ 1226]." ECF No. 1-4.

"As numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later 'switch[ing] tracks' to subject him to mandatory detention under § 1225(b)(2)." *Gutierrez v. Chesnut*, No. 1:25-CV-01515-DAD-AC (HC), 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025)). Thus, even if the court found that § 1225(b)(2) could have applied to Petitioner, Respondents would be precluded from applying it to him now.

Finally, Respondents disagree with Petitioner's claim that his prior release implies that his removal proceedings were under § 1229a. They argue, though do not concede, that it may be possible that Petitioner was released under § 1182(d)(5)(A), for parole for urgent humanitarian reasons or significant public benefit. ECF No. 11 at 16. This option for parole is only available under § 1225, not § 1226. The court, however, fails to see how this could be the case because the record clearly shows that Petitioner (1) was placed into removal proceedings under § 1229a and (2) was released pursuant to § 1226. *See* ECF Nos. 1-2 (NTA stating Petitioner was in removal proceedings under § 1229a), 11-1 (same), 1-4 (noting Petitioner was released pursuant to § 1226).

## II.     The Applicability of § 1226(b)

Having dispensed with Respondents arguments relating to § 1225(b)(2), the court next considers what remedy is appropriate. Courts vary in their approach, even when dealing with factually similar situations. Some simply require a bond hearing pursuant to § 1226(a), while others order release and a pre-deprivation hearing if Respondents attempt re-detention. *Contrast Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *14 (N.D. Cal.

Sept. 12, 2025) (ordering a pre-deprivation hearing), *with Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1184 (D. Haw. 2025) (ordering a bond hearing), and *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (ordering a bond hearing).

What is clear is that if the court were to allow Petitioner's detention to continue under § 1226, he would be entitled to a bond hearing. Section 1226(b) authorizes the Attorney General to "revoke a bond or parole authorized under subsection (a), rearrest the [noncitizen] under the original warrant, and detain the [noncitizen]." 8 U.S.C. § 1226(b). Respondents submitted to the court the administrative warrant for arrest of Petitioner (a Form I-200), dated August 3, 2023, satisfying the statutory pre-requisites for detention under § 1226(a).[1] ECF No. 26-1; *see Gabriel J. v. Bondi*, No. 26-CV-00865 (SRN/LIB), 2026 WL 295192, at *3 (D. Minn. Feb. 4, 2026) (noting that the issuance of a warrant is a precursor to detention under § 1226(a)). Section 1226(b) then could potentially apply to Petitioner, allowing re-detention.

But because the government released Petitioner pursuant to § 1226(a), he is "protected by the Due Process Rights created by § 1226(a)." *Otero on behalf of Caicedo-Ruiz v. Kaiser*, No. 25-CV-06536-NC, 2025 WL 3301056, at *8 (N.D. Cal. Nov. 26, 2025). Thus, even if he is re-detained pursuant to § 1226(b) or even if a violation of his conditions of release did occur, as Respondents

---

[1] Notably, the I-200 warrant form further undercuts Respondents' argument that Petitioner can be detained pursuant to § 1225(b)(2). ECF No. 26-1. It states that "From evidence submitted to me, it appears that: ADAM BRYANT PENA-BECERRA[,] an alien who entered the United States at or near EAGLE PASS, TEXAS on AUGUST 2, 2023 is within the country in violation of the immigration laws and is therefore liable to being taken into custody as authorized by [Section 1226] of the Immigration and Nationality Act." *Id.*

argue, Petitioner is still entitled to a bond hearing.[2] *Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *8 (N.D. Okla. June 12, 2025) (stating "a noncitizen who is re-detained after DHS exercises its broad authority to revoke a bond—even one issued by an immigration judge—may (again) seek a custody redetermination from an immigration judge and may appeal an adverse decision to the BIA").

Petitioner, however, makes an additional argument. He argues that the government's authority "to revoke release under § 1226(b) is not unbridled. Caselaw, regulations, and due process permit revocation only where there is a materially changed circumstance, and this fact must be found by a pre-arrest hearing by an immigration judge."[3] ECF No. 28 at 1. As part of this due process argument, Petitioner asserts that "the only way to protect against arbitrary deprivation of liberty is to give notice and the chance to respond *before* a person is rearrested." *Id.* at 3. In other words, Petitioner seeks release and a pre-deprivation hearing before any re-detention.

Respondents contend that § 1226(b) affords broad latitude to rearrest noncitizens released under § 1226(a). They point to the regulation in 8 C.F.R. § 236.1(c)(9), which states:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody

---

[2] Those detained under Section 1226(a) may request a custody redetermination hearing in front an immigration judge. 8 C.F.R. § 1003.19(a)–(b).

[3] Relatedly, the BIA has limited the discretion to revoke bond to a change of circumstances, *if* the previous bond determination was made by an immigration judge. *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). Courts have also noted that DHS, at least in the past, required a similar change of circumstances where the previous release decisions were made by a DHS officer, as in this case. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. § 236.1(c)(9). According to Respondents, no particular showing is required to revoke bond, though they maintain that Petitioner has violated the conditions of his release. ECF No. 26 at 6.

As an initial matter, the court disagrees with Respondents' contention that Petitioner's arrest is by itself proof that Petitioner violated his conditions of release, thereby justifying revocation of bond. They argue that while other portions of the INA explicitly require a conviction to trigger a provision, § 1226(b) does not. But that reasoning is beside the point. Petitioner's Order of Release on Recognizance (Form I-220A) ("ORR") states that Petitioner must comply with certain conditions, including "not violat[ing] any local, State or Federal laws or ordinances" and not "commit[ting] any crimes while on" the ORR. ECF No. 1-5 at 1, 3. An arrest in no way proves that Petitioner violated any law or committed any crime; it only signals that he may be charged with doing so. Despite Respondents' request to do so, the court will not cavalierly wave away that distinction, which is a bedrock principle of our criminal justice system. The arrest by itself does not prove that Petitioner violated any condition of his ORR. *Duncan v. California*, No. S-04-523 LKK/PAN, 2006 WL 1883385, at *2 (E.D. Cal. July 7, 2006) ("[T]he mere fact that plaintiff was arrested, without more, does not establish that plaintiff was engaged in criminal activity.")

The remaining question then is whether there are any limits on Respondents' discretion to revoke bond under § 1226(b). "Nothing in the brief text of the statute and the accompanying regulations suggests that procedural protections such as notice of the intention to revoke parole, service of the evidence justifying revocation, and a hearing before a neutral arbitrator are required prior to re-arrest and redetention." *O.F.C. v. Almodovar*, No. 25-CV-9816 (LJL), 2026 WL 74262,

at *6 (S.D.N.Y. Jan. 9, 2026); *see Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *9 (N.D. Okla. June 12, 2025). But Petitioner argues that the Due Process clause imposes such limits, even if the text of the statute does not. *See also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) (stating "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process").

Finding that Petitioner has a protected liberty interest at stake, as described below, the court now undertakes a due process inquiry under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). In *Mathews*, the Supreme Court outlined three factors that are relevant to the inquiry: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

Here, Petitioner has a substantial private interest in remaining out of detention on bond, especially since he has been out on bond since 2023. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("Petitioner has a liberty interest in his continued release on bond."). After all, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts have accordingly held that "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *see Pruitt v. Heimgartner*, 620 F. App'x 653, 657 (10th Cir. 2015) ("It is well-established that 'a

9

liberty interest *inherent* in the Due Process Clause arises upon an inmate's release [on parole] from confinement,'" quoting *Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005)).

There is also a significant risk of erroneous deprivation of that liberty interest here. At every juncture up to this point, Petitioner has been determined to *not* be a danger to the community or a flight risk. For example, the corresponding regulation to § 1226(a) requires that an immigration officer must determine before granting release that such "release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Thus, Petitioner's prior release indicates that ICE "necessarily determined" that Petitioner "would not pose a danger and was likely to appear for future proceedings." *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1198 (W.D. Wash. 2025). In addition, after his recent 2026 arrest, Petitioner was ordered released, with no conditions of release applied. ECF No. 1-7.

Respondents argue that there are sufficient procedural protections already in place to protect against the risk of erroneous deprivation—namely that Petitioner can seek a custody redetermination hearing after being re-detained. *See Guillermo M. R.*, 791 F. Supp. 3d at 1034 (suggesting that the right to a bond hearing under § 1226 may decrease the risk of erroneous deprivation). But that procedure is insufficient to protect his liberty interest because that custody redetermination hearing would necessarily occur *after* the deprivation occurs. As the Supreme Court "usually has held . . . the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The potential to be released again does not cure the harm arising from the initial detention. However, a pre-deprivation hearing would resolve this issue.

Admittedly, the Court in *Zinermon* noted that, in some circumstances, a statutory provision for a post-deprivation hearing satisfies due process. *Id.* at 128. But it grounded that statement in cases in which there was a "necessity of quick action by the State," citing to *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), or the "value of predeprivation safeguards . . . is negligible in preventing the kind of deprivation at issue," citing *Parratt v. Taylor*, 451 U.S. 527 (1981), or the question was "whether the *state* is in a position to provide for predeprivation process," citing to *Hudson v. Palmer*, 468 U.S. 517 (1984). It thus stated that "in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake . . . or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process." *Zinermon*, 494 U.S. at 132.

These considerations have limited to no force here. There is no question that Respondents are in a position to organize a pre-deprivation hearing, and there is no indication that significant urgency exists in this case. After all, Petitioner has been deemed to not be a flight risk by both Respondents in 2023 and by a state judge in Utah in 2026.

Additionally, some have argued that noncitizens released on bond "are in many ways similarly positioned to those who have been released from criminal confinement on probation or parole." *O.F.C. v. Almodovar*, No. 25-CV-9816 (LJL), 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026). The court agrees that the parolee analogy is at times useful, but it disagrees with those courts that have suggested that the Supreme Court's precedents in *Morrissey* and its progeny in the parole context that allow for post-arrest hearings apply with equal force to the immigration context. *See id.* at *8 (holding that "the Supreme Court has specifically held that a prompt post-arrest hearing is sufficient in the context of revoking certain forms of conditional liberty, and that determination undermines Petitioner's contention that a pre-arrest hearing was required here"); *see*

*also Morrissey v. Brewer*, 408 U.S. 471 (1972). Despite the increasing criminalization of our nation's immigration system, immigration detention remains *civil* detention. "[G]iven the civil context, a [noncitizen's] liberty interest is arguably greater than the interest of parolees in *Morrissey*." *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1054 (N.D. Cal. 2021) (quoting *Ortega*, 415 F. Supp. 3d at 969–70).

Moreover, the argument that a post-detention custody redetermination hearing provides adequate process holds even less weight in the current context. Respondents detained Petitioner not because they exercised any sort of discretion to revoke his bond under § 1226(b). Rather, Respondents even now still maintain that Petitioner must be mandatorily detained under § 1225(b)(2)(A). The court will not bless continued detention pursuant to § 1226(b), even with a post-detention bond hearing, when Respondents admit they have not exercised in the first place any of the discretion envisioned by § 1226(b).[4] 8 C.F.R. § 236.1(c)(9) (stating that "such release may be revoked at any time in the *discretion* of" certain officials); *see Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) (applying similar reasoning).

Finally, the court does not find that a pre-deprivation hearing would impose a costly burden on the government or unduly interfere with the government's interests in enforcing immigration law and protecting the public. Courts across the nation have recently been ordering custody redetermination hearings in the face of the government's deportation push, and these hearings have generally been able to occur within seven days of those orders. There is no risk of serious delay.

---

[4] Petitioner also raises an Administrative Procedures Act claim. The court need not reach it given the resolution of the petition based on the other two claims.

Petitioner would have also been entitled to a custody redetermination hearing in any case, so requiring that hearing to take place before detention does not increase administrative costs. *Singh v. Andrews,* No. 1:25-CV-00801, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."). "Indeed, a pre-deprivation hearing could reduce administrative costs by potentially avoiding an erroneous deprivation of liberty, which would save the costs of unnecessary detention." *Guillermo M. R.*, 791 F. Supp. 3d at 1037. At bottom, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970. A pre-deprivation hearing is warranted.

Because the court finds that Respondents are unlawfully detaining Petitioner under § 1225(b)(2), Petitioner has met his burden. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner."). The court thus orders that Respondents release Petitioner, and if they seek to re-detain him, they must provide him with notice and a pre-deprivation hearing, in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a flight risk or danger to the community.[5] *See Abanil v. Baltazar*, No. 25-CV-4029-WJM-STV, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026) ("As a general matter, the Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an

---

[5] There is currently a circuit split on whether the petitioner or the government bears the burden of proof at a bond hearing under § 1226(a). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203–05 (9th Cir. 2022) (discussing the circuit split). The Tenth Circuit has not spoken to this issue yet. *Abanil v. Baltazar*, No. 25-CV-4029-WJM-STV, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026).

individual's liberty interest is at stake." (quoting *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 944 (D. Colo. 2025)).

## CONCLUSION AND ORDER

For the foregoing reasons, the court ORDERS as follows:

1. Mr. Peña Becerra's petition for a writ of habeas corpus is GRANTED. ECF No. 1.

2. The respondents are ORDERED to either immediately release Mr. Peña Becerra or to release Mr. Peña Becerra in Salt Lake City as soon as practical and without undue delay, based on Mr. Peña Becerra's preference. If applicable, Respondents must provide a status report within 48 hours detailing the release plan and any associated timeline. Respondents must also provide a status report informing the court of Mr. Peña Becerra's release within 24 hours of the release.

3. The respondents are ORDERED, at the time of release, to provide Mr. Pena Becerra any personal effects and identification documents that were confiscated from him.

4. The respondents are ENJOINED from imposing further restraints on liberty (e.g., electronic monitoring) that were not imposed on Mr. Peña Becerra prior to his 2026 arrest, unless those restraints are determined to be necessary at a future pre-deprivation or custody hearing. Mr. Peña Becerra must be released to the same legal status and conditions he enjoyed prior to the 2026 arrest.

5. If Respondents seek to re-detain Mr. Peña Becerra, absent exigent circumstances, they must provide Mr. Peña Becerra notice of at least seven days before a pre-deprivation hearing before an immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Mr. Peña Becerra is a flight risk or danger to the

community. The respondents are ENJOINED from re-detaining Mr. Peña Becerra on the basis that he is subject to detention under 8 U.S.C. § 1225(b)(2).

Signed April 3, 2026.

BY THE COURT

_____
Jill N. Parrish
United States Chief District Judge